(February 19, 1894.)

## STATE v. HENDEL.

### [35 Pac. 836.]

SECTION 1887 CONSTRUED—APPOINTMENT OF ELISOR.—The appointment of an elisor to take charge of a jury during the progress of a trial is not within the provision of section 1887 of the Revised Statutes of Idaho.

EVIDENCE—DESTRUCTION OF EVIDENCE.—H. and R. were jointly charged by information with the crime of murder. H., upon his application, was granted a separate trial. During the trial of H. a certain bullet was offered, and counsel for H. asked the court to permit a chemical and microscopical examination of the bullet to be made in order to ascertain if there were not evidences of human blood and human tissues discoverable upon the surface of the bullet. To this counsel for the defendant R. objected—that to grant the request would be to jeopardize his client, by the destruction of evidence vital to his defense. *Held,* that the permitting of counsel for R. to be heard to raise this objection was not error.

SAME.—It appearing that the making of the test requested would consume from one to two weeks, and there being no evidence of anything upon the surface of the bullet that seemed to indicate the presence of blood or human tissue, the denial of the request was not error.

TESTIMONY—DISCRETION OF TRIAL COURT—ADMISSION OR REJECTION OF EXPERT TESTIMONY.—The admission or rejection of expert testimony in a given case must rest largely in the discretion of the trial court, and where it is evidence that such testimony, if admitted, would tend to aid the jury in coming to a satisfactory conclusion upon the facts, such admission is not error.

BILL OF EXCEPTIONS—VENUE.—Where in a criminal case it suffi-
ciently appears from the bill of exceptions that the venue was
proved, and it is conceded that the record contains only a part of
the evidence, the objection that proof of the venue does not affirma-
tively appear in the bill of exceptions will not obtain.

(Syllabus by the court.)

APPEAL from District Court, Alturas County.

N. M. Ruick, for Appellant.

The court erred in overruling the application of defendant
for the appointment of an elisor, to have in charge the jury
during the trial. The statute provides that an elisor may be
appointed "when it appears by affidavit to the satisfaction of
the court . . . . that both of these officers [sheriff and coroner]
are disqualified or by reason of any bias, prejudice or other
cause would not act promptly or impartially." (Rev. Stats.,
sec. 1877.) It is a constitutional and statutory right of a
defendant to have witnesses in his behalf, and he had the right
to call experts to make examination, and to have the bullet
placed in their hands for that purpose, so that they could tes-
tify understandingly. (Rogers' Expert Testimony, sec. 80;
citing *Commonwealth v. Twitchell,* 1 Brewst. (Pa.) 562; *Peo-
ple v. Gonzales,* 35 N. Y. 49, 61.) "The general rule is, that
the opinions of witnesses are inadmissible. . . . . The excep-
tion to the rule is, that, on questions of science, skill or trade,
or others of like kind, persons of skill, sometimes called ex-
perts, are permitted to give their opinions in evidence. . . . .
This is on the ground of necessity, when the facts in issue are
not themselves accessible by evidence." (*City of Chicago v.
McGiven,* 78 Ill. 347, 349; *Linn v. Sigsbee,* 67 Ill. 75, 81, 82;
*Mayor etc. of New York v. Pentz,* 24 Wend. 668, 673, 677;
1 Wharton on Evidence, sec. 436; *Muldowney v. Illinois Cent.
R. R.,* 36 Iowa, 472.) An expert accustomed to firearms could
not be asked whether a certain piece of paper, found near the
scene, had been used as wadding, and as such shot from a loaded
gun. (*Manke v. People,* 17 Hun (N. Y.), 410, 78 N. Y. 611.)
"The opinion of an expert is not admissible to prove a matter
of common experience and knowledge, upon which any person

of ordinary intelligence is capable of arriving at a correct conclusion." (*Brown v. State,* 55 Ark. 593, 18 S. W. 1051; 1 Greenleaf on Evidence, sec. 440; *Milwaukee v. Kellogg,* 94 U. S. 469; *Hammond v. Woodman,* 41 Me. 177, 66 Am. Dec. 228, and note.) The venue is a material allegation in the information and must be proven equally with the other material allegations. (*People v. Fisher,* 51 Cal. 319; *People v. Bevans,* 52 Cal. 470; *People v. Aleck,* 61 Cal. 137, 138; *Strickland v. State* (Tex.); 13 S. W; 865; *State v. Mills,* 33 W. Va. 455, 10 S. E. 808.)

George M. Parsons, Attorney General, for the State.

The discrimination of the blood of man from that of animals is too uncertain to be used as evidence. (Wharton & Stillé's Medical Jurisprudence, sec. 830; Dean's Medical Jurisprudence, 220.) The analysis could not have been material under the facts of the case. (*Brown v. State,* 32 Tex. Cr. Rep. 119, 22 S. W. 601, 602.) The rule in regard to continuances is, that the affidavit must show that the testimony will be material. (*Territory v. Barth* (Ariz.), 15 Pac. 673; *Covey v. State,* 23 Tex. App. 388, 5 S. W. 283-285; *McAdams v. State,* 24 Tex. App. 86, 5 S. W. 826.) The prosecution held that it was an attempt to deceive the jury, a species of forgery, requiring the testimony of experts to expose the fraud. True, the bullets went to the jury for examination, but the court had a right to permit the jury to be enlightened by the opinion of a witness possessing superior knowledge of the facts as shown by their condition. (*Pate v: People,* 8 Ill. 659, 660; *Linn v. Sigsbee,* 67 Ill. 75-81; 1 Greenleaf on Evidence, sec. 440, note 3;· 7 Am. & Eng. Ency. of Law, 494, rule 8, Expert and Opinion Evidence; *Mulldowney v. Illinois Cent. R. R.,* 36 Iowa, 473; *Coyle v. Commonwealth,* 104 Pa. St. 117-132; *People v. Hall,* 48 Mich. 482, 42 Am. Rep. 477, 12 N. W. 665.) It is not contended that the bill of exceptions in this case contains all the evidence, or that it was admitted that there was a failure to prove venue. (*People v. Tonielli,* 81 Cal. 275-279, 22 Pac. 678; *People v. Marks,* 72 Cal. 46, 13 Pac. 149.) May show it directly or indirectly. (*Harlan v. State,* 134 Ind. 339, 33 N.

E. 1102; *State v. Farley,* 87 Iowa, 22, 53 N. W. 1089; *Territory v. Hicks,* 6 N. Mex. 596, 30 Pac. 872; *Abrigo v. State,* 29 Tex. App. 143, 15 S. W. 408; *People v. McGregor,* 88 Cal. 140, 26 Pac. 97; *People v. Ellsworth,* 92 Cal. 594, 28 Pac. 604.) All the evidence not being before the court, it will be presumed that the other evidence supported the verdict. (*State v. Brennan,* 21 S. Dak. 384, 50 N. W. 625; *Territory v. Neilson,* 2 Idaho, 614, 23 Pac. 537; *People v. Leong Sing,* 77 Cal. 117, 118, 19 Pac. 254.)

HUSTON, C. J.—The defendant John Hendel was charged jointly with one Louis Roder, by information filed in the district court for Alturas county, with the crime of murder in the killing of one Leander Holstrom, on the seventeenth day of March, 1893. Upon their arraignment, defendant Hendel, on his own application, was given a separate trial. On said trial, at the June term, 1893, of said district court, defendant Hendel was convicted of murder in the second degree. A motion for new trial was made on his behalf, which was denied by the court, and from the order denying said motion, and from the judgment of final conviction, this appeal is taken.

The case comes to this court upon a bill of exceptions. The errors assigned are seven in number, and are as follows: "1. The court erred in overruling appellant's motion for the appointment of an elisor to take charge of the jury; 2. The court erred in permitting J. S. Waters, Esq., counsel for Louis Roder, to interpose an objection to, and to be heard in argument upon, the request by appellant's counsel, upon the trial, that the bullet taken from the vest worn by deceased be submitted to a microscopical and chemical expert examination and analysis; 3. The court erred in overruling the application made by appellant's counsel, upon the trial, for leave to have made a microscopical and chemical examination of the bullet found in the vest of deceased, and of the substance or substances adhering thereto; 4. That the court erred in overruling the objection of appellant's counsel, upon the trial, and in permitting the witness D. W. Figgins to testify as to his belief in relation to the bullet found in the vest of deceased; 5. That the

court erred in overruling the objection of the appellant upon the trial, and in permitting the witness Thomas Miser to testify as an expert in answer to the following question, put to him by the counsel for the state: 'What is your opinion as to whether that bullet [state's exhibit No. 8] was fired from a pistol?'—and to the following: 'What is your opinion as to whether that [bullet found in vest] has been fired from a pistol?' 6. The court erred in overruling the objection of appellant, made at the trial, and in permitting the witness Seaborn Jones to testify as an expert as to the appearance and condition of a bullet, then in evidence, and as to whether it had been fired from a weapon—gun or pistol; 7. The court erred in denying defendant's motion for a new trial." We will consider the errors assigned in the order in which they are presented in appellant's brief.

As to the first error assigned: The refusal of the court to appoint, on application of defendant, an elisor to take charge of the jury during the trial of the case. We think the action of the court was correct. The application did not come within the provision of the statute applicable to such cases. (Rev. Stats., sec. 1887.) The granting or refusing of the application was within the discretion of the court, and it seems to us it was properly exercised in this case.

As to the second assignment of error by the court: In permitting counsel for appellant's codefendant to be heard in opposition to appellant's request that a certain bullet, offered in evidence by appellant, should be submitted to analytical and microscopical examination. While the point presented is somewhat novel, we think it was largely a matter of discretion with the trial court, and we cannot say, upon an examination of the record before us, that the action of the court even tended to prejudice the case of appellant. The facts, as shown by the record here (and it is conceded it is only a part of the evidence), are substantially as follows: The appellant was a keeper of a saloon or beer hall in the town of Hailey, Alturas county. On the night of the 16th of March, 1893, deceased and three others had been drinking beer at appellant's place, until about 4 o'clock on the morning of the 17th, when as is quite:

usual in such cases, the debauch culminated in a quarrel between appellant, his codefendant, Roder, who was at the time in the employ of appellant, on the one side, and deceased and his three companions, on the other, during which quarrel two shots were fired, one by appellant and one by his codefendant, Roder. There is some evidence of a third shot being fired, but it hardly arises to the dignity of a suspicion. One of the shots took effect on the body of deceased, entering between the seventh and eighth ribs, on the right side, striking and tearing away a piece of the eighth rib, one-fourth of an inch in width, and one-half an inch in length, glancing upward, and passing through the lungs and through the body of the heart, and out through the left breast, between the sixth and seventh ribs. At the time the inquest was being held, and after the clothes had been removed from the body of deceased, a bullet was found upon the floor, in close proximity to the place where the clothing was removed from the body. This bullet was of size carried by the pistol used by appellant on the night, or rather the morning, of the homicide, to wit, a "British Bulldog" pistol, of 44-caliber. Another bullet was also found at that time, which had passed through a portion of the partition of the room, about eight feet from the floor. This latter bullet was of the size carried by the pistol had and used by appellant's codefendant, Roder, on the night of the homicide, to wit, a 45-caliber Colt's revolver. It is conceded that appellant and Roder each fired one shot at and in the direction where deceased was, or was supposed to be. When the clothes of deceased were removed, it was found that the bullet that had passed through him had made a hole in the lining of his vest, at a point thereon corresponding with the place of exit of the bullet from his body. Search was made for the bullet, and one was found, as above stated, on the floor near where the clothes had been taken from the body of deceased. No other bullet was found at that time. The bullet found on the floor, as stated, bore unmistakable evidence of having been fired from a gun or pistol, and also of having come in contact with some hard substance, which had battered the point, and scraped or torn some of the substance from the side of it. This bullet was of the size and fitted the pistol of

appellant. But now appears the peculiar and disturbing feature of this case. When the clothing of deceased was brought before the magistrate on the preliminary examination of the defendant (it does not appear from the record when the preliminary examination took place, but it was presumably some time after the inquest, which was held on the 17th or 18th of March; it is not exactly clear which of these two days), upon an examination of the vest of deceased by the sheriff, in whose custody the clothing of deceased had been from the time of the inquest to the time of the preliminary examination, a bullet was found in the lower corner of the left side of the vest, between the outside material and the lining; and this bullet, so found, fitted and was the size carried by the pistol used by appellant's codefendant, Roder, on the occasion of the homicide. Upon the production of this bullet by the sheriff (called on the part of the defendant), who took it from the vest of deceased at the time of the preliminary examination of defendant Hendel, and who had retained it in his possession since that time, counsel for defendant Hendel moved the court to permit a microscopical and analytical examination to be made by a competent expert of the substance or substances adhering to the bullet found in the vest of deceased, for the purpose of determining its true composition. To this motion, one J. S. Waters, an attorney of said district court, and who, it seems, was counsel for appellant's codefendant, Roder, objected, claiming that, as the production of this bullet was an attempt to fasten the alleged homicide upon his client, he insisted that the bullet should be retained in its then condition until the trial of his client, informed against jointly with the defendant on trial, was had. The permitting of Waters, aforesaid, to be heard upon said motion, is assigned as error by counsel for appellant. We are unable to see any error in this ruling of the court. The defendants had been informed against jointly. Hendel, upon his application, had been awarded a separate trial. It was, it seems to us, the duty of Roder's counsel, not only to be present at the trial of Hendel, but to vigilantly watch and scrutinize the conduct of such trial, to the end that none of the legal rights of his client should be sacrificed or jeopardized in the

interest of Hendel. We think the district court committed no error in permitting the counsel of Roder to be heard on the said motion of appellant, either as *amicus curiae,* or in behalf of his client, but that the action of the court was consonant with, and calculated to effect the ends of justice.

The third specification of error presented by appellant is based upon the refusal of the court to permit the "microscopical and chemical examination of the bullet, and of the substance or substances adhering thereto." Aside from the objections urged by the counsel for Roder against the granting of this request, which, of themselves, were sufficient, in our view, to warrant the action of the court, neither the court nor the law ever intended that the granting of a separate trial to one of two or more defendants, jointly indicted, should be used by the defendant first placed on trial as a means by which he could sacrifice his codefendants, or do aught to impair their just and legal defense. But it does not appear from the record that there was any substance or substances adhering to the bullet which required the invocation of either chemical or microscopical aid to define its character. One witness testified: "There is something in the creases of this bullet, but I cannot say what it is. The apex of the bullet is slightly battered, and is marked with the imprint of the cloth—warp of the cloth—on the end of the bullet." And this was all the testimony appearing in the record upon the subject. Neither of the medical witnesses testified to the existence of anything on the surface of the bullet at all resembling, or intimating an appearance of, "blood stains, or human tissues." So far as the record before us shows, the blood and tissue theory has no more support in the evidence than does the theory of the third shot, with which it is intimately allied. The medical witnesses stated that it would take from one to two weeks to procure the test required. We think, under the circumstances, it was within the discretion of the trial court to grant or refuse the application on the part of appellant, and that, in refusing it, the court committed no error.

The fourth specification of error is predicated upon the ruling of the court in permitting D. W. Figgins, one of the

medical witnesses, "to testify as his belief in relation to the bullet found in the vest of the deceased." It was a theory sought to be established by the defense that three shots were fired—two by Roder and one by Hendel; that it was one of the shots fired by Roder that killed the deceased. To maintain this theory, the defense called Dr. N. J. Brown, who testified as follows, in regard to the bullet found upon the floor near where the clothing was removed from the body of deceased: "Under all the conditions of the injuries inflicted, and the manner in which the deceased was dressed, this bullet, from its appearance, did not pass through the body of the deceased." On being shown the bullet taken from the vest of deceased, said witness testified in regard to the same as follows: "I believe this bullet could have produced all the effects upon the body of the deceased, as I have observed them, and as they have been testified to here in court. This bullet has marks on the point that resemble the mesh work of weaving of cloth, and the edges are turned over from force of some kind, striking some substance, or some substance striking it." Unsatisfactory as this evidence would seem to be, either from a legal or a logical standpoint, it was enough that it was offered on the part of the defense, and was permitted to go to the jury, and it was but common justice to permit the prosecution to meet it in rebuttal by the testimony of Dr. Figgins, who testified as follows: "A bullet striking a rib would be battered, in my opinion. I do not believe that the bullet taken from Holstrom's vest is the bullet which killed Lee Holstrom. I have examined that bullet, both with the naked eye and with a magnifying glass. There is the appearance of the web or mesh of the cloth on that bullet, while I believe that the bullet which caused the death of Lee Holstrom was battered, more or less, and would not have the meshes of the cloth stamped on it. The meshes of the cloth, if stamped on the bullet, would have been destroyed by contact with the rib. In my experience, as a surgeon, I never saw a bullet that had been fired into bodies that had any grease substance left upon it. The burning of the powder would melt the grease." Without commenting upon the rela-

tive value of the testimony of these two expert witnesses, it is enough to say that the ancient conundrum of "Who should decide when doctors disagree?" seems to have been settled by the jury in this case, at least. Several other witnesses were called by the defense in rebuttal, who testified to the same effect as Dr. Figgins—that the appearance of the bullet taken from the vest of deceased showed it had never been fired from a gun or pistol—giving various reasons for this conclusion. Notwithstanding counsel for the defendant had opened the door to this class of testimony by introducing that of Dr. Brown, he now contends that it was error for the court to permit the same class of testimony in rebuttal. A careful examination of the authorities constrains us to believe that the question as to the admissibility of expert testimony must depend largely, if not entirely, upon the circumstances of each particular case; and where it is apparent, not only that no injustice has been done, and that the exigencies of the case seem to warrant or require the admission of such testimony, for a proper and satisfactory presentation of the facts to the jury, such admission is not error.

It is objected by counsel for the appellant that the bill of exceptions does not show that any venue was proven upon the trial. While it is apparent from the record that there was great remissness on the part of counsel who represented the state in the settlement of the bill of exceptions, we think there is sufficient therein to show that the venue was proven. Besides, it was conceded by counsel for appellant, before the argument of the case was entered upon, that the record contained only a portion of the evidence.

The objection that the verdict is contrary to the evidence is not well taken. In addition to the evidence already commented upon, no less than four witnesses (Field, McGarnish, Farrel, and Saunders) testified positively that Hendel admitted to them, and in their presence, that he killed Holstrom, and undertook to justify the killing by saying that deceased had knocked him down, and had knocked his wife down, and he had to kill him.

Hendel's attempt to explain away these admissions was, as evidenced by the verdict, a failure. Finding no reversible error in the record, the judgment of the district court is affirmed.

Morgan and Sullivan, JJ., concur.