417 P.2d 217

The STATE of Idaho ex rel. Wallace C.
BURNS, Ernest F. Gaffney and R. Doyle
Symms, Idaho Board of Highway Direc-
tors, Plaintiff-Appellant,

v.

Stephen S. BLAIR and Audrey E. Blair,
his wife, Defendants-Respondents.

No. 9822.

Supreme Court of Idaho.

July 29, 1966.

Faber F. Tway, Chief Legal Counsel,
Dept. of Highways, Boise, for appellant.

O. R. Baum and Ben Peterson, Pocatello,
for respondents.

SMITH, Justice.

Appellant, State of Idaho, brought this
action for the purpose of condemning, for
highway purposes, a portion of respond-

ents' residence property situate in Pocatello, Idaho. The residence property consists of a lot 46.67 feet in width and 90 feet in depth, upon which is situate a two-bedroom brick dwelling with partial basement; also a detached frame garage with alley access. The portion sought to be condemned is a strip 20 feet in depth extending 46.67 feet, the entire width of the lot, constituting the front 20 feet of the property. The property is "well cared for."

The trial court, at the conclusion of the trial, entered findings of fact and conclusions of law, and judgment in conformity therewith awarding "just compensation" to respondents in the sum of $5,222.00, from which judgment appellant has appealed.

Appellant assigns error of the trial court in denying appellant's motion to strike the testimony of respondents' witness Satterfield as regards the value of the property after the highway was constructed, on the ground that such testimony was not based upon the fair market value of the property at that time.

Mr. Satterfield qualified as a realtor, actively engaged in that business for 25 years, who had promoted some 14 residential developments and engaged in the listing and handling of sales of real property and improvements, in the entire Pocatello area, which included passing upon and determining values of real estate and improvements. He testified in some detail concerning his examination of respondents' residential property, including the buildings.

On direct examination, Mr. Satterfield testified that in his opinion the highest and best use of respondents' property was for residential purposes. He was asked if he had arrived at what he considered to be the *market value* of the entire property on January 13, 1965 (date of filing the complaint), to which he answered in the affirmative, and then stated that in his opinion the "fair *market value* on that date would be $11,750." (Emphasis supplied) He then evaluated the land without the improvements thereon, and then the im-

provements separate from the land, *both before and after the taking.*

On cross-examination, he was interrogated as to his opinion being limited to the value of respondents' property for residence purposes. In that regard he was asked whether he had an opinion as to its use for commercial purposes after construction of the highway. He replied that he recognized the possibility of such use, "providing other properties could be obtained," and for that reason declined to give his opinion as to its value for commercial purposes. At that point appellant moved to strike Mr. Satterfield's testimony on the ground that it was not based upon the fair market value of the property after completion of the highway, which motion the court denied.

On redirect examination Mr. Satterfield again stated his opinion to be that the highest and best use of the property was for residential and not for commercial purposes, because after severance of the 20-foot strip the depth of the remaining property would be only 70 feet. In his opinion the small size of the remaining property would not be conducive to commercial purposes without acquisition of bordering property, or as he stated, "it would have to be tied with other property."

Viewed in context, all of Mr. Satterfield's testimony had to do with the market value of respondents' property, with its highest and best use for residential purposes, both before and after the taking.

Appellant's motion to strike Mr. Satterfield's testimony went to the weight of the evidence rather than to its competency. See Valdez v. Christensen, 89 Idaho 285, 404 P.2d 343 (1965). The competency of a witness to express an opinion as to the value of the property is for the court to determine; the admission of an opinion as evidence is largely discretionary and its weight and effect is for the trier of facts. Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146 (1961); Jensen v. Boise-Kuna Irr. Dist., 75 Idaho 133, 269 P.2d 755 (1954); Hobbs v. Union Pac. R. Co., 62 Idaho 58, 108 P.2d 841 (1940);

Thibadeau v. Clarinda Copper Mining Co., 47 Idaho 119, 272 P. 254 (1928). The assignment is without merit.

■■■ Appellant, in his remaining two assignments, asserts that the trial court erred in allowing $500.00 for restoration of the steps and the approach to respondents' dwelling house; also in allowing $300.00 for replacement of shrubbery and for landscaping, while at the same time allowing damages to the dwelling in the amount of $4,000.00, on the ground that the court allowed double damages.

The principal issues presented for determination by the trial court and presented by this appeal have to do with the value of respondents' property taken for highway purposes and the severance damage to the remaining property, in accordance with I.C. § 7–711.[1] No issue was raised concerning the trial court's finding that the highest and best use of respondents' property, both prior to and after the taking, is for residential purposes. The findings which appellant questions are set forth below.[2]

The evidence is conflicting as to the values found by the trial court; but is not in dispute as to the various items constituting damage either in the form of property taken, or resulting to the remaining property because of the taking.

Mr. Satterfield, respondents' witness, was aware of the various elements of damage in that he stated that the highway improvement would require the taking of the 20-foot strip of land, necessitating the removal of the shrubs and lawn, and require the steps to the porch to be built in some other place. He considered the lot value before the taking to be about $1,900. and after the taking, about $1,200.; and the value of the house and improvements to be $9,850. before the taking, and $5,300. after the taking.

Mr. Kelly, a witness produced by appellant, was a realtor and appraiser of over eight years' experience. Upon being requested by the court to describe the property which appellant sought to condemn for highway purposes, he stated:

"The property being taken is the front yard of the dwelling, which is improved with lawn and sidewalk entering into the dwelling, and the taking also includes part of the front steps of the dwelling. * * * "

He also stated that certain shrubbery was situate on the property taken. After having so testified, Mr. Kelly, on direct examination, was asked to state his opinion of the value of "the actual land in the taking." He replied that he estimated the value of "the actual land in the taking to be $363.87." On cross-examination he stated, "I did consider a value on the shrubbery, the front lawn, and the replacement of the front steps of two hundred dollars. * * * "

1. "Assessment of damages.—The court, jury or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

"1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed.

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff. * * * "

2. Findings questioned:

"That the value of the land itself, without the house, before the taking, is $1,-900.00; that the value of the land actually taken for condemnation would be ⅔ths thereof, or the sum of $422.00.
* * *

"That the restoring of the house, consisting of steps and approach to the house, taken by reason of the condemnation, would reasonably cost the sum of $500.00 and that sum, therefore, is the loss.
* * *

" * * * that the reasonable cost of the replacement of shrubbery and landscaping would be the sum of $300.00.
* * *

" * * * that the damage to the dwelling remaining after the taking would be the sum of $4,000.00."

Mr. Marshall, a witness produced by appellant, was a real estate broker of eighteen years' experience. He testified that "the land itself required to be taken * * would reduce the value of the property twenty-four hundred dollars * * * this is the land itself;" he then continued, "plus —there is some damages for landscaping and so forth." And then he added, "twenty-four hundred dollars for the land, plus five hundred dollars to remodel the front porch steps—relocate the front steps and to change the landscaping and payment for taking the landscaping in front of the house * * * five hundred dollars in addition to the twenty-four hundred dollars;" and then he made the correction, "thirty-two hundred dollars; five hundred for the steps and three hundred for the landscaping, a total of eight hundred dollars additional or thirty-two hundred dollars." On cross-examination he made it clear that by the highway improvement respondents, property owners, would "lose their entire front yard and lose the steps leading up to the front porch."

In a condemnation proceeding a court, jury or referee must ascertain and assess the value of the property sought to be condemned, and all improvements thereon, pertaining to the realty (damage for taking); and if the property constitutes a part of a larger parcel, the finder of the facts must ascertain and assess the damages which will accrue to the portion not sought to be condemned (severance damage), by reason of its severance from the portion sought to be condemned. I.C. § 7–711. See Big Lost River Irrigation District v. Zollinger, 83 Idaho 401, 363 P.2d 706 (1961); Hughes v. State, 80 Idaho 286, 328 P.2d 397 (1958); Pacific Northwest Pipeline Corporation v. Waller, 80 Idaho 105, 326 P.2d 388 (1958).

The record shows that the highway improvement would require not only the taking of the 20-foot strip of land, but also would require the taking of certain improvements, i. e., the lawn, shrubbery and steps. This is particularly illustrated by the testimony of appellant's witnesses. Mr. Kelly estimated the value of "the actual land" at $363.87, and of the improvements—lawn, shrubbery and front steps—at $200.00. Mr. Marshall, after stating his opinion as to $2,400. severance damages, then testified as to the "plus" damages, i. e. $500. for the steps and $300. for the landscaping.

The trial court, in its findings, segregated the various items of damage, being the value of "the land itself" at $422., and the value of each improvement taken, viz., the steps at $500. and the shrubbery at $300., which corresponded with the testimony of appellant's witnesses as to the separate items taken, and the testimony of Mr. Marshall as to the value of each improvement taken.

It is clear that the trial court intended to separate each item of improvement taken, as separate from "the land itself" taken. Under the findings "the land itself," plus the shrubbery thereon, may be considered as the property taken. The steps taken, with valuation fixed by Mr. Marshall, could have been considered as severance damage, although appear to have been considered as an improvement taken, they having been in whole, or in part, situate on the land taken.

The findings do not delineate specifically whether the various items of respondents' damages constituted valuations for property taken, or constituted severance damages. We are constrained to the view, however, that inasmuch as the findings specifically set out each item of property taken and the valuation thereof, that double damage did not result. Error existing in the form of the findings is thus rendered harmless. Moreover, any such error, if such there be, was cured by the trial court's conclusions of law to the effect that respondents were entitled to a judgment for $5,222. and the judgment which was entered accordingly.

The judgment is affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, TAYLOR and SPEAR, JJ., concur.