(No. 5792. March 31, 1932.)

J. M. BAGGETT and MINERVA BAGGETT, His Wife, Respondents, v. P. D. PACE, as Sheriff of the County of Cassia, State of Idaho, Appellant.

[10 Pac. (2d) 301.]

J. A. Carver, for Appellant.

S. T. Lowe, for Respondent.

LEEPER, J.—This action was instituted in the probate court by the plaintiffs as members of a marital community to recover the sum of $249.75, which had been levied upon by defendant as sheriff of Cassia county under a writ of execution issued upon a judgment theretofore had against one Clark, the son-in-law of these plaintiffs. Defendant prevailed in the probate court and an appeal was taken to the district court. Then the case was tried twice to a jury, the first resulting in a mistrial, and in the latter the plaintiffs recovered judgment. A motion for new trial was made and denied, and defendant appeals both from the judgment and the order denying a new trial.

Evidence introduced on behalf of plaintiffs tended to prove these facts: Plaintiffs were the owners of certain lands near Burley, Idaho, which were planted to beets in the year 1930; of these lands a parcel of about eight acres was separated from the balance, and after this parcel had been planted by plaintiffs, J. M. Baggett made an oral agreement with Clark, his son-in-law, to this effect, that Clark

should take over the crop on the eight-acre tract, do all the work thereon, including irrigation, cultivation, thinning and harvesting, in return for which he would take one-half of the crop; some time after this contract was made Clark advised Baggett that he could not comply with the contract and it was canceled, and thereafter Clark did certain work on the crop for which he was paid by Baggett; in August following, at the request of Clark, the original agreement was again revived by mutual consent, upon the understanding that Clark would pay back to Baggett the amount of wages theretofore paid to him; after the revival Clark did some more work on the beets and began to harvest them, but abandoned the work again before completion and discharged his crew; Baggett then hired him to complete the harvest, paid him going wages, and also paid him $50 for the work he had done after the revival of the original contract in August; all payments were made to Clark by Baggett either by check or by purchase of groceries; one Dell Mallory hauled the beets to the factory and delivered them; Mallory was not paid and later filed a lien against the beets, which was ultimately paid out of their proceeds; the total proceeds from the beets were $582.10, which was credited by the company to Baggett and Clark, under a sales contract executed by Clark covering the crop from the eight-acre parcel; when the check was later made out it ran to Baggett, Clark and Mallory, in order that the purchaser would be protected; in the meanwhile the money in the hands of the sugar company was levied upon by a writ of execution issued out of the case of *Lynn v. Clark,* and afterwards the company paid over to Mr. Pace, the sheriff, a check in the sum of $249.75, and turned over the balance to Baggett, Clark and Mallory; the evidence further showed that prior to the original deal with Clark the Baggetts had executed a chattel mortgage to the Bank of Burley covering all crops grown on their premises.

The defendant introduced no direct testimony rebutting the evidence of plaintiff. However, he did introduce evidence which, if believed, would strongly tend to impeach the testimony of Baggett and Clark and cast doubt upon it. Both

witnesses admitted the giving of evidence in the previous trial which was contrary to their testimony here. Clark conceded an admission made to one Lawrence in November, 1930, which indicated that he still claimed an interest in the beets. The original sales contract executed by Clark was introduced and both parties admitted that the beets were delivered to and received by the sugar company pursuant to its terms. Upon the advice of Baggett, Mallory filed a lien in which he named Clark as owner. Some time after the check was garnished Clark asked Mr. Dunbar, the cashier of the sugar company, if he could not assign or transfer the contract to someone else. Mr. Dunbar was never notified in any way that Clark was not the owner of his share of the beets and no such claim was ever made until after the check was attached. The bank released its mortgage as to the eight acres prior to the levy of execution.

 Thus it will be observed that the situation is this: Plaintiff Baggett and his son-in-law Clark, both interested parties, testified to a direct abrogation of the contract by mutual agreement. Defendant did not directly contradict this testimony, but relied upon impeachment of the two witnesses by proof of admissions to the contrary made elsewhere, and upon proof of circumstances showing a course or dealing contrary to the claimed statement of facts. Both parties admit the execution of the original cropping contract, and as we view the law plaintiff would not be entitled to recover unless he proves a rescission by a fair preponderance of the evidence.

 The relationship created by the contract between Baggett and Clark was that of joint tenancy in the crops produced. This case is governed in principle by the opinion in *Devereaux Mortgage Co. v. Walker,* 46 Ida. 431, 268 Pac. 37, where the court held:

"The theory of cotenancy is favored. Even in the cases where the contract expressly provides that the title to the crops grown shall remain in the land owner until division, it is held, almost without exception, that the tenant or occupier of the land and the land owner are tenants in common of the crops."

Therefore the share of the crop tenant either in the crop or the proceeds thereof is subject to the claims of his creditors either before or after the division, so long as the contract remains effective.

If, however, the cropping contract between Baggett and Clark was actually and in fact rescinded before the rights of the executing creditors attached, and the parties created the new relationship between themselves of employer and employee, then the creditor is bound by the situation existing at the date of his levy. The principal contention made by the appellant is that the evidence of rescission is insufficient to sustain the verdict, and that for the same reason it was error to deny his motion for a nonsuit. It is interesting to note that plaintiffs made a motion for an instructed verdict, upon the ground that their evidence of rescission was uncontradicted.

Witnesses Baggett and Clark testified positively that a rescission had been effected. The impeaching evidence introduced by defendant went only to their veracity, and was not in and of itself evidence of the facts shown by it. (*Portland Cattle Loan Co. v. Gemmell,* 41 Ida. 756, 242 Pac. 798.) Other evidence produced by defendant was such as to reasonably permit the inference therefrom that the contract was continued in effect between Baggett and Clark. However, the issue of abandonment and rescission was squarely passed upon by the jury, resolved in favor of the plaintiff, and under the settled rule of this court cannot be inquired into upon appeal. It is true, as contended by appellant, that the testimony of interested parties must be construed most strongly against them, but nevertheless it is evidence and cannot be disregarded. As to whether or not it has been impeached to such an extent as to render it unbelievable is a question for the jury and their finding cannot be disturbed. The defendant was not entitled to a nonsuit any more than was plaintiff entitled to an instructed verdict, because the record was such as to permit of different conclusions by the triers of fact.

Appellant complains of the refusal of the court to give his requested instruction No. 5, wherein he defined a

rescission of contract by mutual consent. It would appear that the rejected instruction might have · been given with propriety, but its substance was covered by instructions Nos. 4, 6 and 7. The court instructed the jury in so many words that if the original contract was abandoned by Clark, and Baggett thereafter paid him wages for such work as he had done and continued to do, that Clark retained no interest in the beets. While the instructions could have been made more definite and complete, they are not such as to mislead or confuse the jury, and were not so prejudicial as to warrant a reversal. (*Hammond v. McMurray Brothers,* 49 Ida. 207, 286 Pac. 603.) There was no error in the admission or rejection of evidence. While immaterial in view of our holding upon the merits, we note that the record does not contain the certificate required by supreme court rule No. 21 as to papers used by the trial judge in disposing · of the motion for new trial, and the appeal from the order denying it is therefore dismissed. (*Crystal Dome Oil & Gas Co. v. Savic,* 50 Ida. 415, 296 Pac. 772.)

Judgment is affirmed, with costs to respondents.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.