688 P.2d 260 (1984)
107 Idaho 248
INTERMOUNTAIN HEALTH CARE, INC., a nonprofit Utah corporation doing business as Primary Children's Medical Center, Plaintiff-Appellant,
v.
BOARD OF COUNTY COMMISSIONERS OF BLAINE COUNTY, IDAHO, Defendant-Respondent.
No. 14428.
Court of Appeals of Idaho.
August 31, 1984.
*262 Larry L. Goins, Hopkins, French, Crockett & Springer, Idaho Falls, for plaintiff-appellants.
R. Keith Roark, Hailey, for defendant-respondent.
WALTERS, Chief Judge.
Dan and Carla Pritchett applied to the Board of County Commissioners of Blaine County for payment of medical expenses under Idaho's medical indigency statutes, chapters 34 and 35, title 31, Idaho Code. The board denied the application. Intermountain Health Care, Inc. (hereinafter "Intermountain")  a provider of medical care for the Pritchetts  then requested a hearing before the board. Following that hearing, the board again denied the application and Intermountain appealed to the district court. The court affirmed the board's denial and the present appeal resulted. We reverse.
Intermountain raises two issues on appeal. First, did the district court err in holding that a hospital is required to execute on the personal and real property of the applicant prior to submitting a bill to the board of county commissioners? Second, is Intermountain entitled to attorney fees on this appeal?
The facts are simple and can be stated briefly. The Pritchetts are residents of Blaine County. On May 15, 1981, Carla Pritchett gave birth to twin children at Magic Valley Memorial Hospital in Twin Falls. The twins were born six weeks prematurely. Because of their need for extensive and specialized medical care, the children were transferred to Primary Children's Medical Center  a facility operated by Intermountain  in Salt Lake City. The medical bills at Intermountain alone eventually totaled over $87,000. The Pritchetts had only limited health insurance through Mutual of Omaha, which estimated its liability at $32,000, leaving approximately $54,000 due Primary. In June the Pritchetts filed an application with Blaine County on behalf of the twins, for payment of Primary's bill.

I
We must first address the threshold question of whether Intermountain is a proper party to bring this appeal. The board contends that, because the Pritchetts were the applicants for medical assistance, only they were proper parties to perfect the appeal. We disagree for the following reasons.
An application for medical assistance must be signed by the party making the application "and sworn to before some officer authorized by the laws of this state to administer oaths." I.C. § 31-3404. If a third party makes an application on behalf of the indigent, that party must do so under oath. I.C. § 31-3408. Idaho Code § 31-3505, in turn, gives the applicant the right to a hearing before the board and to judicial review. The purpose behind the requirement that an application be signed under oath is evidently to assure that the information contained therein is reasonably accurate and complete. Although the application itself does not appear in the record before us, it is undisputed that Carla Pritchett signed it. Because she swore to the application, the evident purpose is fulfilled; it would seem to be a meaningless *263 ritual to require that Intermountain sign the application as well. This, however, does not mean that any person may pursue an application made by another. Rather the applicant and the pursuing party must have an identity of interest. Such an interest exists in this case.
First, the application for medical assistance concerns only the bill from Intermountain. Although there were substantial other medical bills outstanding, including one for approximately $20,000 from Magic Valley Memorial Hospital, the Pritchetts sought assistance only for amounts due to Intermountain. Second, the application was made at the instance of Intermountain, on a form provided by Intermountain and with Intermountain's assistance.
This situation is analogous to a third-party beneficiary contract. Under that theory a contract is entered into for the benefit of a third party who, although not a signatory to the contract, thereby possesses the right to enforce the contract. In the present case, the application was made for the benefit of Intermountain and thus Intermountain should have the right to pursue that application to the extent allowed by statute. To hold otherwise would be to exalt form over substance. Under these circumstances, we hold that Intermountain can be considered an "applicant," and is a proper party to bring this appeal.

II
We now turn to the issues raised by Intermountain on appeal. Intermountain's first contention is that the district court erred by requiring it to execute on the Pritchetts' property before submission of a bill to the board. The board, on the other hand, insists that we need not address this issue at all. The actual basis of both the district court's and its own holding, the board asserts, is that Intermountain simply did not meet its burden of proving that the Pritchetts were medically indigent.
The medical indigency statutes do not allocate the burden of proof for the hearing to which an aggrieved applicant is entitled. Idaho Code § 31-3505; however, provides in part: "If the application is denied, the applicant may request a hearing before the board of county commissioners. The applicant shall be entitled to judicial review of the decision of the board, in substantially the manner provided in the administrative procedures act, chapter 52, title 67, Idaho Code." Thus, the board is treated as an administrative agency for purposes of judicial review. The board should be treated in the same manner for purposes of the hearing under I.C. § 31-3505.
The Administrative Procedures Act states that "[t]he rules of evidence as applied in non-jury civil cases in the district courts of this state shall be followed." I.C. § 67-5210. The rules of evidence, in turn, govern the allocation of burden of proof.
"The customary common law rule that the moving party has the burden of proof  including not only the burden of going forward but also the burden of persuasion  is generally observed in administrative hearings... . In most hearings the burden of persuasion is met by the usual civil case standard of "a preponderance of evidence."
E. CLEARY, McCORMICK ON EVIDENCE § 357 (3d ed. 1984). We therefore hold that the applicant bears the burden of proving medical indigency.
In order to determine whether Intermountain met its burden of proof, we must decide whether the board correctly applied the statutory definition of medical indigency. A medically indigent person is one who needs "hospitalization and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services." I.C. § 31-3502(1).
At the conclusion of the hearing the board held that "it's quite obvious the petitioner has not satisfied the burden of showing all sources that may be sufficient to *264 enable the Pritchetts to pay for the necessary medical services have been utilized, and until they do ... we must deny the application." The Pritchetts had testified under oath concerning their assets, income and expenses. Their testimony indicated that their necessary monthly expenses far exceeded their monthly income. After examining the record, we must agree with the district court, although the board did not specifically so find, that this condition will likely persist for the foreseeable future. Therefore, the Pritchetts could be deemed not to be medically indigent only if their personal and real property were treated as "resources" under the statute sufficient to pay for the necessary medical services.
There is only one limitation in determining the resources of an applicant under our statute  the resources must be available. "Only those resources actually available to [an] ... applicant can be considered in determining the applicant's eligibility for assistance." Moffett v. Blum, 74 App.Div.2d 625, 424 N.Y.S.2d 923, 925 (1980) (emphasis original). The board counted, as part of the Pritchetts' resources, a thirty-percent interest in a restaurant in Denver. Dan Pritchett testified that this restaurant lost $40,000 in 1980 and that he anticipated a similar loss in 1981. On cross-examination he testified that the value of the physical assets of the restaurant was approximately $90,000. The board, therefore, assigned about $30,000 of that value to the Pritchetts as personal property. We cannot, however, agree that this interest was an available resource.
Pritchett also testified that he would not realize any net money from a sale of that restaurant because the restaurant did not have any "liquidity". Assets which cannot be converted into cash, i.e., which are not liquid, must be excluded in determining the extent of an applicant's resources. Wheatland County v. Bleeker, 175 Mont. 478, 575 P.2d 48 (1978). We also note that the prospective value of the restaurant to the Pritchetts is irrelevant in determining the value of their available resources. Tai v. Lavine, 79 Misc.2d 927, 361 N.Y.S.2d 486 (1974).
The board counters by arguing that it is not bound by Pritchett's assertion that the restaurant is not liquid. At the same time, however, it accepted his valuation of the restaurant's assets. The record discloses no reason why the board can ascribe less weight to Prichett's testimony concerning the liquidity of his one-third interest than the board does to Prichett's testimony concerning the gross value of the business assets. But even if Prichett's testimony that the business was losing money and that his one-third interest was not liquid could be given less weight by the board, the testimony could not be disregarded. His testimony concerning this asset was undisputed and was the only evidence before the board. The board cannot have it both ways. "[T]he testimony of interested parties must be construed most strongly against them, but nevertheless it is evidence and cannot be disregarded." Baggett v. Pace, 51 Idaho 694, 698, 10 P.2d 301, 302 (1932). In fact, if the testimony of an interested party is uncontradicted, it must be accepted as true by the trier of fact unless the witness is not credible. Russ v. Brown, 96 Idaho 369, 529 P.2d 765 (1974). Nor can the board find comfort in the fact that the Pritchetts' testimony regarding their assets and medical expenses was not supported by any documentary or other independent evidence. The board did not request any expert appraisal of the gross value of this asset, nor question Prichett about his assessment of gross value.
That a party has or may have an interest in the outcome of the case is a proper matter for the trier of fact to consider in determining whether a witness is credible, but only where there are other factors which cast a shadow of doubt upon the witness's credibility. See Foxton v. Woodmansee, 236 Or. 271, 388 P.2d 275 (1964). See also Brown v. Ford Motor Co., 479 F.2d 521 (5th Cir.1973); Annot., 62 A.L.R.2d 1191, 1198 (1958). In the final analysis, "[t]he credibility of witnesses ... is exclusively within the province of the *265 trier of the facts." Thomson v. Marks, 86 Idaho 166, 177, 384 P.2d 69, 75 (1963). Both the board and the district court apparently considered the Pritchetts credible, using the Pritchetts' testimony as the basis for their respective opinions. The board will not be heard to complain now, nor can we alter the board's original assessment. The Pritchetts' testimony was properly considered. We hold that the restaurant is not an available resource under the facts of this case.
The Pritchetts' other assets consisted of their equity in a house and two automobiles. There can be little doubt that these items are "other resources available ... from whatever source." The wisdom of this definition, though, is another matter and one which we leave for the legislature to debate. We note that other states provide by statute that certain necessities, e.g., a homestead, a car(s), a certain amount of personal property, are not included resources for determining medical indigency. See, e.g., N.Y. SOC. SERV. LAW § 366(2) (1983); Wash. Rev. Code Ann. § 74.04.005(11) (1983). Our statute, as presently formulated, provides for no such exemptions. But see ch. 6, title 11 and chs. 11 and 12, title 55, Idaho Code.
Therefore, the value of their available resources, according to the Pritchetts, was not more than $20,000. Were they to liquidate these assets, they would be able to pay only a portion of Intermountain's medical bill. The Pritchetts' resources, then, do not appear to be "sufficient to enable [them] to pay for necessary medical services." Idaho Code § 31-3502(1) does not require that an applicant have no assets. It requires only that his medical expenses exceed his available resources. The applicant is either medically indigent or not  one cannot be partially indigent under the statute. Thus, the Pritchetts would appear to fall under the statutory definition of medical indigency.
Considering the testimony regarding their assets, income, expenses and liabilities, the board nevertheless held that the Pritchetts were not medically indigent. Whether the Pritchetts were medically indigent is a question of fact. University of Utah Hospital and Medical Center v. Eriksen, 100 Idaho 18, 592 P.2d 430 (1979). As noted above, judicial review of the board of county commissioner's decision is governed by the Administrative Procedures Act, chapter 52, title 67, Idaho Code. I.C. § 31-3505. Idaho Code § 67-5215(g) states in part that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." In other words, an appellate court will not reverse an agency on questions of fact if the agency's decision is supported by substantial evidence on the record considered as a whole. Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene, 99 Idaho 630, 586 P.2d 1346 (1978); see also Van Orden v. State of Idaho, Dept. of Health and Welfare, 102 Idaho 663, 637 P.2d 1159 (1981). The substantial evidence rule requires the reviewing court to determine whether the agency's findings of fact are "reasonable." Local 1494 v. City of Coeur d'Alene, supra. This was the duty of the district court sitting as an appellate court and it is also our duty on this appeal. Id. Under the facts of this case, we hold that the board's finding that the Pritchetts were not medically indigent was unreasonable.
It might be argued that, under our interpretation of I.C. § 31-3502(1), an applicant who has significant assets, but more significant medical bills, receives a "free ride." That statute, however, also provides: "Nothing in this definition shall preclude the board of county commissioners from requiring medically indigent persons to reimburse the county for a portion of their medical expenses, when investigation of their application pursuant to chapters 34 and 35, title 31, Idaho Code, determines their ability to do so." This sentence would be meaningless if, to be medically indigent, an applicant must be totally without resources. Because the Pritchetts had assets of $20,000, but uninsured medical expenses at Intermountain alone of $54,000, we hold as a matter of law that they *266 were medically indigent as defined by I.C. § 31-3502(1).
We now must address whether, as the district court held, a hospital is required to execute on an applicant's property prior to presenting a bill to the county. Historically, the obligation to provide care for "the indigent sick and otherwise dependent poor" has been recognized as a duty imposed upon counties in Idaho. Henderson v. Twin Falls County, 56 Idaho 124, 139, 50 P.2d 597, 603 (1935). This duty exists in the promotion of the common welfare. Idaho Falls Consol. Hosp., Inc. v. Bingham County Bd. Comm'rs, 102 Idaho 838, 642 P.2d 553 (1982) (Bistline, J., concurring). Idaho Code § 31-3509, as enacted in 1974, required a hospital to make all reasonable effort to collect on an account incurred by a medically indigent person. However, in 1976 the statute was amended to provide: "Hospitals making claims for the hospitalization of medically indigent persons shall make all reasonable efforts to determine liability for the account... ." [Emphasis added.] When a statute is amended, it is presumed that the legislature intended the statute to have a meaning different from that accorded the statute before amendment. Lincoln County v. Fidelity & Deposit Co. of Maryland, 102 Idaho 489, 491, 632 P.2d 678, 680 (1981); Leonard Constr. Co. v. State ex rel. State Tax Comm'n, 96 Idaho 893, 896, 539 P.2d 246, 249 (1975); McKenney v. McNearney, 92 Idaho 1, 4, 435 P.2d 358, 361 (1967). Here, the 1976 amendment represents a conscious move on the part of the legislature to relieve hospitals of the duty to collect on an account and imposes instead simply a duty to "determine liability." Intermountain satisfied this duty by determining the extent of the Pritchetts' assets. It was not then required to execute on those assets before submitting a bill to the county.
Idaho Code § 31-3407 provides that where a hospital submits a claim for necessary emergency services furnished to a medically indigent person the claim shall be audited and, when approved, the "services shall be paid for by the county of residence of the sick or otherwise indigent person." The present version of I.C. § 31-3508 provides, as it has since 1974 when it was first enacted, that "[t]he bill submitted for payment pursuant to section 31-3405, Idaho Code, shall show the total hospital charges less any amounts which have been received under any other federal or state law." (Emphasis added.) The deductions from the charges are thus only those payments actually received by the hospital. In the event any payments are thereafter received by the hospital for charges which have been paid by the county, "said sums shall be paid over to [the] county." I.C. § 31-3509. The county is therefore liable to Intermountain for the entire bill and it has the corresponding right to seek reimbursment from the Pritchetts to the extent permitted by statute. I.C. §§ 31-3510, -3510A. For example, under § 31-3510A we believe the county could require the Pritchetts to liquidate their interest in the Denver restaurant "over a reasonable period of time" and apply the proceeds from such liquidation toward reimbursement of the county.

III
Intermountain also requests attorney fees on appeal. Unless otherwise provided for by statute or by contract, "attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." Minich v. Gem State Developers, Inc., 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979); Decker v. Homeguard Systems, 105 Idaho 158, 666 P.2d 1169 (Ct.App. 1983). Intermountain claims that the board defended this appeal frivolously because it had "unreasonably denied the Pritchetts' claim without foundation." We cannot agree.
In 1978, our Supreme Court reviewed the history of I.C. § 31-3405 and complained of its "inartful draftsmanship." University of Utah Hospital and Medical Center v. Bethke, 98 Idaho 876, 879, 574 P.2d 1354, *267 1357 (1978). We believe this criticism applies with equal force to many of the present medical indigency statutes. Under these circumstances, we believe that the respondent board of commissioners was well-justified in defending this appeal. Intermountain's request for attorney fees is therefore denied.
The order of the district court, upholding the denial of the application by the county commissioners, is reversed. The district court is directed to remand this matter to the board of county commissioners with an order to grant Intermountain's request for assistance under the medical indigency statutes. Costs to appellant Intermountain Health Care, Inc.
SWANSTROM, J., concurs.
BURNETT, Judge, dissenting in part.
In Part II of its opinion, the court (a) substitutes its own finding for that of the county commissioners on a factual question relating to medical indigency and (b) holds the county liable for the hospital's "entire bill" despite the existence of resources to pay part of the cost. I respectfully dissent.

A
As the majority acknowledges, Idaho Code § 67-5215(g) provides that a reviewing court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." In this case, the existence and value of the Pritchetts' resources were questions of fact. There was little controversy about the value of the Pritchetts' home, two vehicles and other assets in Idaho. However, the Pritchetts' interest in a Colorado restaurant presented a difficult valuation problem. The county commissioners apparently could not rest content with testimony by Dan Pritchett that the restaurant had no value. This testimony was not supported by an appraisal of the restaurant property; nor was it accompanied by a detailed statement of profit or loss relating to restaurant operations. By declining to find the Pritchetts medically indigent upon the information provided, but allowing them to make a further showing in the future, the county commissioners in effect determined that the restaurant could not be evaluated as a resource without more definitive information. I would not disturb this determination.
However, the majority opinion overturns the county's decision and enters its own finding that the restaurant had no value as a resource. The majority explains its action by noting that the commissioners accepted Mr. Pritchett's testimony on other matters and that his credibility was not impugned. I believe the majority has confused the task of evaluating credibility with the task of weighing the evidence. A witness may be credible yet his testimony may be entitled to little weight if it is vague or general on a subject, such as the value of a partial interest in a going business, where the fact-finder must make a precise analysis. The majority's view, that when a witness' testimony has been accepted on one point it must be accepted on all other points unless rebutted, is unduly rigid. It forces the county either to approve an application upon evidence entitled to little weight or to adopt an adversarial posture by gathering rebuttal evidence.
I resist imposing this Hobbesian choice upon Idaho counties. It threatens the counties' integrity as fact-finders under the Administrative Procedure Act. Moreover, it alters the burden of going forward with evidence  and perhaps the underlying burden of proof  in cases where indigency applications are supported by vague information. I acknowledge, of course, that I.C. § 31-3405 imposes upon the county clerk a duty to "investigate" the grounds of a medical indigency application. But this statute does not make the county an adversary nor does it preclude the county from requiring the applicants themselves to furnish detailed information on matters within their knowledge or control.
The majority suggests that the county in this case did not direct the Pritchetts to supply additional information. I disagree. Such direction is embodied in the county's *268 determination that the Pritchetts had not adequately proven their resources and that "until they do ... we must deny the application." In any event, the majority, by outright reversing the county's decision rather than remanding the case, wholly insulates the Pritchetts from the burden of presenting further information about the restaurant. In so doing, I believe the majority usurps the county's role as finder of the facts and custodian of the indigency fund.

B
I am also troubled by the majority's declaration that a county is liable for the "entire bill" rather than for the difference between the cost of care and the value of other resources available. What the majority has done is nothing short of converting county assistance from the last resort to the first resort for hospitals whose patients have resources to pay part, but not all, of the costs of medical care.
This enlargement of county responsibility rests primarily upon the majority's interpretation of an amendment to I.C. § 31-3509 in 1976. During that year the Legislature enacted a comprehensive revision to the medical indigency statutes. It changed § 31-3509 as follows:
31-3509. COLLECTIONS BY HOSPITALS. Hospitals making claims for the hospitalization of medically indigent persons shall make all reasonable efforts to collect the amount of determine liability for the account so incurred from any available insurance or other sources available for payment of such expenses prior to submitting the bill to the county for payment. In the event any payments are thereafter received for charges which have been paid by a county pursuant to the provisions of chapters 34 and 35, title 31, Idaho Code, said sums shall be paid over to such county.
1976 IDAHO SESS. LAWS ch. 121, § 11, p. 469.
Nothing in the amended statute says that counties must pay the entire bill or that hospitals are absolved of any responsibility to collect from other resources. Rather, in my view, the plain meaning of the amendment is that a hospital need not delay submission of its bill to the county while collection from other resources is being completed. The hospital may submit its bill upon determining the extent to which other resources appear liable for the costs incurred. Collection from these resources often is a time-consuming process. By this amendment, the Legislature has made it feasible for a hospital in a medical indigency case to submit its bill within the strict time requirements prescribed by I.C. § 31-3504.
Because my colleagues interpret I.C. § 31-3509 differently, it might be suggested that the statute is ambiguous. If so, the underlying legislative intent must be ascertained. I find no evidence that the Legislature intended in 1976 to make counties the primary source of payment for hospital bills incurred by persons who possess some resources but not enough to cover the full cost of care. To the contrary, the "Fiscal Note" attached to the 1976 legislation states that "[t]he purpose of the act is to limit the counties' liability for indigent medical care... ." (Emphasis added.) Moreover, if the Legislature had meant to free hospitals from any responsibility to collect from other resources, it is unlikely that the heading of § 31-3509 would have remained "COLLECTIONS BY HOSPITALS."
Neither am I persuaded by the majority's contention that I.C. § 31-3508, which requires a hospital bill to show total charges and amounts collected, abrogates the hospital's responsibility to collect from other sources. Merely to recite this contention is to recognize its internal contradiction. In addition, the fact that a hospital bill must show amounts actually received when the bill is submitted does not mean that liabilities determined but yet unpaid should be disregarded in computing the county's obligation.
The majority seems to insist that because a hospital need not fully collect from other resources before billing the county, the *269 hospital need not collect from those resources at all or, at the very least, it need not continue to collect from them after the county has been billed. Not only is this position extreme, it is unnecessary to a decision in this case. The district court upheld denial of the Pritchetts' application upon a theory that the hospital must complete its collection from all other resources  even to the extent of executing upon assets  before it can receive any payment from the county. It would be sufficient on appeal simply to hold that the district court misconstrued I.C. § 31-3509. The statute requires determination of liability from other resources, but not complete collection from those resources, before the hospital can bill the county. We need not take the statute to an opposite extreme and declare, as does the majority, that the hospital may send the county the "entire bill," less only money actually received to date, leaving the county with the task of obtaining reimbursement from all remaining resources.
I believe that where medical indigency is demonstrated, but there are resources available to pay part of the cost of hospital care, the county's liability extends only to the shortfall. Compelling the county to pay the entire cost, and then to recover from other resources, shifts from the hospital to the county a large measure of the administrative burden and financial risk of providing health care to the community. This shift carries profound policy implications. It should not be announced peremptorily by a court when it is neither mandated by the plain language of the law nor clearly intended by the Legislature.