786 P.2d 611

Maria SALINAS, Plaintiff-Appellant,

v.

CANYON COUNTY and Glenn Koch, Joyce Chase, and Bob O'Connor, in their official capacities as the Board of County Commissioners of Canyon County, Defendants-Respondents,

Elizabeth REYES, Plaintiff-Appellant,

v.

CANYON COUNTY and Glenn Koch, Joyce Chase, and Bob O'Connor, in their official capacities as the Board of County Commissioners of Canyon County, Defendants-Respondents.

Nos. 17896, 18149.

Court of Appeals of Idaho.

Feb. 5, 1990.

**220**

Idaho Legal Aid Services, Inc., Caldwell, for plaintiffs-appellants. Michael E. Duggan, argued.

Richard L. Harris, Canyon County Prosecutor, Charles L. Saari, Deputy Pros. Atty., argued, Caldwell, for defendants-respondents.

WALTERS, Chief Judge.

In these consolidated appeals,[1] we are asked to address two questions dealing with the sufficiency of evidence required to establish a claimant's entitlement to medical indigency benefits. I.C. §§ 31–3401 to –3411; I.C. §§ 31–3501 to –3515A. In the first appeal, Maria Salinas asks us to determine whether she met the burden of proving that her home in Texas was exempt from consideration as an available resource for payment of her medical bills. In the second appeal, we must decide whether Elizabeth Reyes required emergency treatment, and also whether her Texas home was an available resource. Answering these questions in the negative, the Board of Canyon County Commissioners (Board) denied medical indigency benefits for both appellants. The district court upheld the Board's determination. We reverse the orders of the district court in both cases.

## I. Salinas' Appeal

Salinas, a migrant farm worker, was admitted to the West Valley Medical Center in Caldwell, Idaho, in July, 1986, and underwent emergency surgery for removal of her gall bladder. Her total medical expenses were $6264. Salinas filed an application with Canyon County for medical in-

digency assistance. I.C. § 31–3404. On her application, Salinas stated that she and her husband owned a mobile home and lot (property) in Edinburg, Texas. She estimated the value of the property at $10,000, of which the Salinas' still owed approximately $3,000. Salinas gave a rural delivery box number as the address of her property.

Salinas' application was denied by the Board. Salinas then requested a hearing before the Board pursuant to I.C. § 31–3505. Neither Salinas nor her husband attended the hearing but they were represented by counsel. During the hearing, the attorney argued that Salinas' property was exempt as an available resource due to Texas homestead law. To support his contention, the attorney submitted an affidavit prepared by Salinas explaining that because of her financial situation she was unable to pay her medical bills. Salinas also listed a street address other than the address she had given on her medical indigency application. The Board again denied medical indigency benefits, stating that Salinas' affidavit was insufficient to show that she did not have income or other resources available to pay her medical bills.

Salinas appealed to the district court, which affirmed the Board's decision. In doing so, the district judge reasoned that, because of the inconsistent evidence regarding the location and use of the family's home, Salinas had failed to carry the burden of proving that her property was not to be considered an available resource to meet her medical bills. This appeal by Salinas followed.

■ Initially we note our standard of review. Generally, where a district court acts in an appellate capacity under the Administrative Procedures Act, I.C. § 67–5215(b) through (g), on further appeal from the district court's determination, we review the record independent of the district court's decision. *Madsen v. State Dept. of Health and Welfare*, 114 Idaho 182, 185, n. 3, 755 P.2d 479, 482 n. 3 (Ct.

---

**1.** By order of the Court these cases were consolidated for the purpose of oral argument. Because the appeals involve a common question of

law, the Court has decided to issue one opinion, discussing each case respectively in parts I and II.

App.1988) (review denied). In doing so, we will defer to the agency's findings of fact unless those findings are clearly erroneous. *Ferguson v. Board of County Commissioners for Ada County,* 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986). On appeal, neither the district court nor this Court may substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67–5215(g).

■ In order to be entitled to medical indigency benefits in Idaho, an applicant must establish that he or she is:

[A] person who is in need of hospitalization and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, *does not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services.* [Emphasis added.]

I.C. § 31–3502(1). To establish indigency, an applicant need not be completely destitute or devoid of all resources; all that is required is a showing that the person is unable to pay for necessary medical services. *Carpenter v. Twin Falls County,* 107 Idaho 575, 691 P.2d 1190 (1984). In determining what resources are available for payment, the obligated county may not consider those items which are immune from attachment or levy, such as equity in residential property to the extent covered by a homestead exemption. *Idaho Falls Consolidated Hospitals, Inc. v. Board of Commissioners of Jefferson County,* 109 Idaho 881, 712 P.2d 582 (1985). Under Idaho's medical indigency statutes, the applicant bears the burden of proving medical indigency. *Intermountain Health Care, Inc. v. Board of County Commissioners of Blaine County, Idaho,* 107 Idaho 248, 688 P.2d 260 (Ct.App.1984) *reversed on other grounds,* 109 Idaho 299, 707 P.2d 410 (1985). However, this duty is not absolute. The clerk of the board of county commissioners has a reciprocal duty to make reasonable inquiry into the grounds for the application. I.C. § 31–3405. Once an applicant presents at least a prima facie showing of medical indigency, the burden of proof shifts to the board to rebut the applicant's claims. *See IHC Hospitals, Inc. v. Board of Commissioners,* 108 Idaho 136, 145, 697 P.2d 1150, 1159 (1985) *overruled on other grounds, Intermountain Health Care, Inc. v. Board of County Commissioners of Caribou County,* 108 Idaho 757, 762, 702 P.2d 795, 800 (1985); I.C. §§ 31–3405, –3406.

■ In the present case the district court concluded that the clerk of the Board had failed to investigate Salinas' application. Nonetheless, the district court upheld the Board's denial of benefits, concluding that the conflicting addresses given by Salinas indicated that the property which she claimed as a homestead may or may not have been used for that purpose. We disagree. It is apparent from the record that Salinas claimed her property as a homestead exemption under Texas law.[2] How-

**2.** We agree that Texas homestead law should apply. *See DeMeyer v. Maxwell,* 103 Idaho 327, 328–30, 647 P.2d 783, 784–86 (Ct.App.1982) ("most significant relationship" test adopted for determining applicable law in contract dispute cases). Article 16, section 50 of the Texas Constitution (Vernon Supp.1989), in effect at the time of the Salinas' application, read:

The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is

required in making a sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. This amendment shall become effective upon its adoption.

Contrary to the $30,000 limit on homestead exemptions in Idaho, I.C. § 55–1003, there is no

ever, there is nothing in the record which indicates that the Board clerk investigated Salinas' application. Furthermore, we cannot ascertain from the record whether counsel for the County offered any evidence to refute Salinas' claim. Under these circumstances, we conclude that Salinas has established at least a prima facie case that her property was protected under the Texas homestead law.

■ In reaching our decision, we take exception with the district judge's opinion that the differing addresses reported by Salinas demonstrated that her property was not used as a homestead. Under Texas law, property need not be presently occupied in order to be declared a homestead; all that is required is an intended future use and an overt act evidencing an intention to use the property as a homestead. *Clark v. Salinas*, 626 S.W.2d 118, 120 (Texas App.1981).

Furthermore, we find it immaterial that Salinas listed a street address as her place of residence in her affidavit rather than the rural delivery box number shown in her application. Her intention to claim her mobile home and lot as a homestead exemption is evidenced in the record by a copy of the purchase agreement for the sale of the property, as well as by Salinas' admission in her affidavit that she and her husband had already paid $8,000 of the $10,000 purchase price of the property. There is nothing in the record to show that Salinas had an interest in more than one parcel of real property. Without some proof to the contrary, the district judge was incorrect in assuming that the Salinas' property may have been used for some purpose that disqualified it from protection as a homestead.

■ Finally, we are mindful that our decision today places a burden upon the County to insure that medical indigency applications are accurate and authentic. However, we believe that such a duty must be placed upon the County to insure accurate results. The purpose of the statute is to provide individuals with reasonable assistance in obtaining medical indigency benefits. *See IHC Hospitals, Inc. v. Board of Commissioners*, 108 Idaho at 145, 697 P.2d at 1159. Placing the burden of proving medical indigency *and* the burden of refuting all reasonable inferences to the contrary on the applicant would defeat this purpose.

We therefore hold that the Board failed to refute Salinas' claim that her Texas property was exempt from inclusion as an available resource in determining medical indigency benefits. Furthermore, our review of Salinas' application and subsequent affidavit reveals that it is obvious she did not have sufficient additional resources to pay her medical bills at the time of her operation. We therefore reverse the order of the district court which upheld the denial of medical indigency benefits to Salinas. Because Salinas was indigent as a matter of law, *see Idaho Falls Consolidated Hospitals, Inc. v. Board of Commissioners of Jefferson County, supra*, we remand this case to the district court to enter an order requiring the County to pay Salinas' claim to the West Valley Medical Center.

## II. Reyes' Appeal

Reyes, also a migrant farm worker, arrived in Idaho in February, 1986. In June, 1986, as a result of a biopsy performed at the Caldwell Women's Clinic, Reyes was diagnosed with cervical cancer and it was suggested that she undergo a hysterectomy. Approximately one month later, Reyes underwent a second biopsy at the Mercy Medical Center in Nampa which indicated that she did not have cancer and that there was no need for a hysterectomy. As a result of the second biopsy, Reyes incurred medical bills totaling $449.

Reyes filed an application for medical indigency benefits with the County in June, 1986, before the second biopsy. In her

limit on the amount of the exemption in Texas. Texas Const. art. 16, sec. 51. Nor is there, evidently, any requirement in Texas that a written declaration of homestead be filed in order to claim the exemption. *See Lifemark Corp. v.*

*Merritt*, 655 S.W.2d 310 (Tex.App.1983). *Compare* I.C. §§ 55–1203, –1205 (repealed and replaced by I.C. §§ 55–1001, –1011; 1989 Idaho Sess. Laws, Ch. 371, pp. 934–37).

application, Reyes stated that she and her husband owned a lot in Star, Texas, on which they were building a home. The Board denied Reyes' application because she was a resident of Texas. Reyes requested a hearing before the Board, which after gathering further evidence, affirmed its earlier decision. In reaching its conclusion, the Board specifically found that Reyes was a legal resident and property owner in Texas but that, due to her failure to attend the hearing, the Board was unable to determine whether she had sufficient income or assets to pay her medical bills. The Board also found that no emergency existed which required immediate emergency treatment of Reyes after the initial biopsy. Reyes then filed this action in district court. The district court affirmed the Board's decision because Reyes had failed to establish she was entitled to a Texas homestead exemption. This appeal followed.

■ Reyes raises two important issues on appeal. First, she submits that her biopsy at the Mercy Medical Center constituted "emergency" treatment exempting her from the residency requirements under I.C. § 31–3404. Second, she contends that the real property which she and her husband own in Texas is not an available resource because it is protected by Texas homestead law.

With regard to Reyes' residency argument, we note the following. Idaho Code § 31–3404 provides that, to be entitled to medical indigency benefits, the applicant must be a resident of Idaho for at least one year and of the county at least six months preceding the application for county aid, unless an emergency or extreme necessity exists. *See East Shoshone Hospital District v. Nonini,* 109 Idaho 937, 712 P.2d 638 (1985). In this case, the Board found that Reyes was not a resident of Idaho, and that no medical emergency existed requiring Reyes' second biopsy.

We disagree with the Board's findings. Our review of the record indicates that Reyes submitted an affidavit from the physician who performed the second biopsy. The doctor stated that treatment of Reyes'

condition could not have been postponed until her return to Texas in the fall of 1986. The physician's affidavit was supported by the physician who conducted the first biopsy, who also submitted an affidavit stating that Reyes' condition had to be treated as soon as possible. There was no evidence presented by the Board clerk to refute these claims; rather, the Board's finding on this matter is based solely on the unsupported conclusion that Reyes' treatment was not an emergency because she purposely delayed receiving treatment for over a month after her first biopsy.

We find this reasoning unappealing. According to the medical indigency statutes, services rendered in an emergency are defined as those reasonably necessary to alleviate illness or injury which, *if untreated,* would likely cause death or serious disability. I.C. § 31–3407. Nothing in the record suggests that Reyes did not take immediate steps to secure a second medical opinion regarding her condition. Under the circumstances, a delay of one month in securing a second biopsy does not indicate the absence of a medical emergency. To the contrary, the evidence clearly demonstrates that Reyes took steps to diagnose her condition in a prompt manner rather than delaying treatment—and risking her life—by postponing the second biopsy until it was economically feasible for her family to return to Texas. Even though Reyes' condition was subsequently found not to be life threatening, there existed, at the time of her treatment, an imperative need to confirm whether she would require immediate emergency care. To determine that such diagnostic testing was not compensable would defeat the clear purpose of the medical indigency statutes, and provide a disincentive to hospitals in treating indigents who may or may not need additional medical procedures. We therefore conclude the Board's determination—that Reyes did not warrant emergency treatment—was erroneous.

■ Finally, we address the issue of Reyes' property in Texas. Similar to the situation in the Salinas matter discussed in Part I, *supra,* Reyes claims that her Texas

property was not an available resource due to the Texas homestead law. Texas Const. art. 16, section 50 (Vernon Supp.1989). In support of her contention, Reyes submitted to the Board her husband's affidavit stating that he was building a house on the property. Nonetheless, the Board concluded that, due to the Reyes' failure to attend the hearing and make full disclosure of their assets, they did not sustain their burden of proving medical indigency. We disagree. Consistent with our decision in Part I of this opinion, Reyes established a prima facia showing that her home in Texas was exempt as an available resource due to Texas homestead law. Furthermore, a review of Reyes' application indicates a lack of other resources to pay her medical bills. Under these circumstances, the Board's failure to rebut Reyes' claim renders the County liable for medical indigency benefits to Reyes.

Accordingly, we reverse the order of the district court upholding the denial of Reyes' claim for medical indigency benefits. As with the Salinas' case, Reyes was medically indigent as a matter of law. *Idaho Falls Consolidated Hospitals, Inc. v. Board of Commissioners of Jefferson County, supra.* We remand this case to the district court to enter an order requiring the County to pay the Reyes' bill at the Mercy Medical Center.

Costs will be allowed to the appellant in each case; however, no fees are awarded.

SWANSTROM, J., and BENGTSON, J. Pro Tem., concur.