813 P.2d 345

**Nancy MORGAN, Appellant,
Appellant on Appeal,**

v.

**IDAHO DEPARTMENT OF HEALTH AND WELFARE, Respondent,
Respondent on Appeal.**

**No. 18544.**

Supreme Court of Idaho,
Boise January 1991 Term.

June 14, 1991.

Idaho Legal Aid Services, Inc., Caldwell, for appellant. Andrew C. Thomas argued.

Larry EchoHawk, Idaho Atty. Gen. and Teresa A. Sobotka, argued, Deputy Atty. Gen., Boise, for respondent.

BOYLE, Justice.

In this appeal from a decision of an administrative hearing officer for the Idaho Department of Health and Welfare, we are called upon to determine whether a Medicaid recipient is entitled to payment of medical expenses incurred in a weight loss program to treat a condition known as pseudotumor cerebri.

I.

*Statement of the Case*

The appellant, Nancy Morgan, suffers from a medical condition known as pseudotumor cerebri,[1] which causes increased intracranial pressure. As a result, Morgan suffers from persistent headaches, blurred vision and memory loss. In addition, blindness can result from pseudotumor cerebri if the condition is not controlled and treated. Morgan has received the usual medical treatment which consists of prescription medication including diuretics and acetazolamide. In addition, Morgan has also had spinal taps on a frequent basis to relieve the intracranial pressure.

Pseudotumor cerebri tends to affect young adult women who are moderately

1. "Pseudotumor cerebri" is the medical term used to describe a "nontumorous condition which produces the symptoms of tumor of the brain." *Dorland's Illustrated Medical Dictionary* (24th ed.) p. 1242.

overweight, and may occur in persons who are thirty pounds or more over their normal weight. According to the record, Morgan weighs 160 pounds, which is approximately thirty-five pounds over the recommended weight for her height and bone structure. Morgan's personal physician, Dr. Lawrence Green, a clinical neurologist, has prescribed that she lose the extra weight to treat the condition. Morgan has made efforts to lose weight through a diet and exercise program, however she has been unable to reduce her weight below 155 pounds. Because her condition is chronic, and because she risks blindness, Dr. Green has determined that a medically supervised weight loss program is a medical necessity in order to relieve the intracranial pressure. Should Morgan's condition fail to improve, Dr. Green is of the opinion she will require a neurosurgical spinal shunt operation.

Morgan is a Medicaid recipient whose medical treatment is being paid by the Idaho Department of Health and Welfare (hereinafter "IDHW"). The medical treatment provided thus far has included both medication and spinal taps. Should neurosurgery for the spinal shunt operation be necessary in the future, IDHW has acknowledged that it will pay for the surgery.

Dr. Green and IDHW both agree that a weight loss program is medically necessary to treat Morgan's condition of pseudotumor cerebri. However, IDHW has refused to pay for the weight loss program on the basis that its regulation, 16 IDAPA 03.-9065.02(m) excludes Medicaid coverage for treatment of obesity. An administrative hearing was held in which the hearing officer affirmed the IDHW's decision to deny payment. Morgan appealed the decision to the district court which affirmed the administrative hearing officer's determination.

## II.

### Judicial Review of Administrative Proceeding

Under the Administrative Procedure Act, a person who has exhausted all administrative remedies available and who is aggrieved by a final decision in a contested case of an agency is entitled to judicial review. I.C. § 67-5215. Judicial review of an agency decision is provided in I.C. § 67-5215(g) as follows:

(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

▮ Judicial review pursuant to I.C. § 67-5215(g) allows a court to reverse or modify an agency decision only under limited circumstances, including a constitutional violation, action in excess of statutory authority, clearly erroneous findings of fact, an arbitrary and capricious decision or one characterized by an abuse of discretion. *State ex rel. Richardson v. Pierandozzi*, 117 Idaho 1, 784 P.2d 331 (1989). The hearing examiner, as the trier of fact, is entitled to place greater or less weight on any particular piece of evidence according to its relative credibility. *Id.; Thompson v. Marks*, 86 Idaho 166, 384 P.2d 69 (1963). Likewise, if the hearing officer's findings are clear, concise, dispositive, supported by the evidence and not affected by errors of law, they should be upheld by the court. *Van Orden v. State Dep't of Health & Welfare*, 102 Idaho 663, 637 P.2d 1159 (1981). Judicial review of an administrative order is confined to the record, I.C.

§ 67–5215(f), and the reviewing court may not substitute its judgment for that of the administrative hearing officer on questions of fact. *Id.; Tappen v. State Dep't of Health & Welfare,* 98 Idaho 576, 570 P.2d 28 (1977). Judicial review of agency proceedings is limited. However, the reviewing court is obliged to reverse a decision if substantial rights of an individual have been prejudiced because the administrative findings and conclusions are in violation of statutory provisions. *H & V Eng'g, Inc. v. Idaho State Bd. of Professional Engrs. & Land Surveyors,* 113 Idaho 646, 747 P.2d 55 (1987); *Allen v. Lewis–Clark State College,* 105 Idaho 447, 670 P.2d 854 (1983).

It is with the above statutory standards and case law in mind that we review this action.

### III.

### *Overview of Medicaid Program*

■ The Medicaid program was enacted by Congress under the Social Security Act and authorizes federal grants to the states to provide medical assistance to the indigent. 42 U.S.C. § 1396. As an overview, "[t]his legislation creates a comprehensive cooperative federal-state program for medical care under which participating states are federally financed for their medical assistance programs if they submit a state plan comporting with federal requirements." 81 C.J.S., *Social Security* § 132, p. 249 (1977). Once a state voluntarily elects to participate in the Medicaid program, it must comply with the require-

2. 03.9065, SERVICES NOT COVERED BY MEDICAL ASSISTANCE. The following services are not covered by payment by the Medical Assistance program:
    01. *Service Categories Excluded.* The following categories of service are excluded from MA payment:
        a. Acupuncture services; and
        b. Naturopathic services; and
        c. Prostheses services, including both prosthetic and orthotic devices; and
        d. Dental services for recipients over twenty-one (21) years of age; and
        e. Alcohol and/or drug rehabilitation programs; and
        f. Bio-feedback therapy; and
        g. Fertility related services including testing.

ments of the act and the applicable regulations. *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Under the Medicaid program, the federal government will share with the states the cost of any medical service offered in the states' program so long as the service provided is any of the seventeen categories of medical care enumerated in 42 U.S.C. § 1396d(a). *Coe v. Hooker,* 406 F.Supp. 1072 (D.C.N.H.1976). A state which elects to participate in the Medicaid program must provide payment in the following five categories: (1) inpatient hospital services; (2) outpatient hospital services; (3) laboratory and x-ray services; (4) skilled nursing facility services; and (5) physicians services. 42 U.S.C. § 1396d(a). A state may choose to also provide services in any of the remaining categories enumerated in 42 U.S.C. § 1396d(a). *Coe v. Hooker,* 406 F.Supp. 1072 (D.C.N.H.1976).

### IV.

### *Medical Procedures For Obesity Excluded*

■ IDHW relies on its regulation at 16 IDAPA 03.9065.02(m) [2] as the basis for denying payment. However, Morgan asserts that under the facts in this case and the unique nature of her medical condition, denying payment for a weight loss program on the basis that it is a treatment for obesity is improper because the program is medically necessary to improve her medical condition.

02. *Procedure Excluded.* The costs of physician and hospital services for the following types of treatments are excluded from MA payment. This includes both the procedure itself, and the costs for all follow up medical treatment directly associated with such a procedure:
    . . . .
    c. Gastric stapling procedures; or
    d. Panniculectomy procedures; or
    e. Acupuncture; or
    . . . .
    g. Intestinal bypass surgery for the treatment of morbid obesity; or
    . . . .
    m. *All medical procedures for the treatment of obesity;* (Emphasis added.)

Following an administrative hearing on July 26, 1989, the administrative hearing officer affirmed the Department's decision to deny payment for the weight loss program. The hearing officer made the following finding:

Although the Petitioner's participation in a weight loss program may or may not result in relief of some of her symptoms associated with her condition of pseudotumor cerebri, participation in the weight loss program is a treatment for obesity. Payment for such treatment is excluded by the Department's regulations. The fact that the treatment may coincidentally treat another condition in addition to obesity, as argued by the Department, does not except the Petitioner from the Department's regulation which excludes payment for treatment of obesity.

Following our careful review of the IDHW's findings of fact and the conclusions of law, we hold that the findings of the Department hearing officer do not support the conclusion that the weight loss program recommended by Morgan's physician is a "treatment for obesity."

When Morgan first began her course of treatment with Dr. Green, she was suffering from severe headaches and blurred vision. The pressure on her brain was measured to be over 450 as compared to normal pressure which is considered to be under 200. Dr. Green has performed spinal taps on Morgan and has prescribed various medications including steroids which caused Morgan to gain an additional forty pounds, increasing her weight to approximately 200 pounds. Upon discontinuing the use of steroid treatment, Morgan lost most, but not all, of the weight she had gained while taking the medication. She currently weighs 160 pounds, which is five to ten pounds above what she weighed when she began treatment. Dr. Green has determined that Morgan weighs thirty to thirty-five pounds above the normal weight for a woman of her height and bone structure and that her pseudotumor cerebri condition must be treated.

The parties stipulated at the outset of the hearing procedure that Morgan's weight loss program was prescribed by her treating physician and that the weight loss program was medically necessary to treat her condition of pseudotumor cerebri. A letter from Morgan's physician to the Department, which is part of the record before us, states that it is "absolutely imperative that this young girl go through a medically supervised weight loss program otherwise she will eventually go blind from this illness."

The hearing officer found that Dr. Montgomery, the physician testifying for the Department, determined that Morgan's request for payment of a weight loss program should be denied because the regulations specifically exclude payment for treatment of obesity. The hearing officer's conclusions of law state that "participation in the weight loss program is a treatment of obesity." However, a careful review of the record reveals there was no finding that Morgan was obese, nor does the evidence in the record support such a finding.

A review of the evidence submitted at the hearing demonstrates that when asked if Morgan was obese, Dr. Montgomery stated that he thought that she "wasn't particularly obese." Further, when asked if the medical profession has a particular standard that it uses to determine if someone is obese, the only standard referenced by Dr. Montgomery was that which is used by local physicians who perform gastric bypasses and gastric stapling procedures. He stated that the standard they use in those proceedings to determine whether the treatment is advisable is that the patient should be at least 100 pounds above their normal weight.

The evidence in the record, particularly the letters from Dr. Green, emphatically state that Morgan has been diagnosed as having pseudotumor cerebri and that he is treating her for that condition. Dr. Green's letters set forth in detail the numerous medical problems exhibited by Morgan, and the various treatments prescribed as necessary to remedy her condition. Thus far, the various treatments have failed to remedy the pseudotumor cerebri condition and the only two other possible

 

treatments for the condition are weight loss or neurosurgery.

It is clear that 16 IDAPA 03.9065 expressly excludes gastric stapling procedures (subsection 02.c), panniculectomy procedures (subsection 02.d), and "All medical procedures for the treatment of obesity" (subsection 02.m). However, the medically necessary weight loss program is not a surgical "procedure" such as gastric stapling or a panniculectomy procedure. The clear evidence in the record establishes that the treatment prescribed is not a procedure to treat obesity as contemplated in the regulations. Rather, the weight loss program, like the prior medications and spinal taps which the Department has paid for, and the spinal shunt which the Department acknowledges it will pay if performed, is for the treatment of Morgan's condition of pseudotumor cerebri. The fact that the weight loss program may secondarily treat obesity is not dispositive. The primary purpose for the treatment is to treat the pseudotumor cerebri and the prescribed program should be paid by the Department.

In view of the absence of a finding that Morgan is obese, as opposed to merely being overweight, the IDHW's conclusion that the weight loss program is a treatment or procedure for obesity and not subject to payment through the Medicaid plan is not supported by the evidence. The agency's finding and conclusion that payment of the weight loss program is prohibited by the State's Medicaid plan is erroneous in view of the reliable, probative, and substantial evidence contained in the record that the condition of pseudotumor cerebri is the condition for which she is being treated.

We therefore reverse the agency's decision that the prescribed weight loss program is a treatment for obesity and not covered by the State's Medicaid Plan. The case is remanded to the agency hearing officer and the Department is ordered to pay for the prescribed treatment.

Costs to appellant. No fees awarded.

BISTLINE, JOHNSON and McDEVITT, JJ. concur.

BAKES, C.J. concurs in result.