883 P.2d 1084

In the Matter of the Application of Carin JOHNSON for County Medical Aid,

JEFFERSON COUNTY, Petitioner–Appellant,

v.

EASTERN IDAHO REGIONAL MEDICAL CENTER, Respondent.

No. 21132.

Court of Appeals of Idaho.

Oct. 26, 1994.

Dunn and Clark, Rigby, for appellant. Robin D. Dunn, argued.

Thomsen and Stephens, P.A., Idaho Falls, for respondent. James D. Holman, argued.

PERRY, Judge.

In this appeal, we are asked to resolve whether the medical services provided to Carin Johnson by Eastern Idaho Regional Medical Center (EIRMC) were necessary and, therefore, compensable under Idaho's medical indigency assistance statutes. We conclude that the county commissioners' conclusion that the medical services were neither reasonable nor necessary was erroneous. Accordingly, we affirm the district court's order reversing the decision of the commissioners denying payment for the medical services.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 1992, at approximately 4:00 p.m., Carin Johnson suffered a severe asthma attack in which her shortness of breath led to cardiopulmonary arrest. Johnson's husband, who had initially set out to drive her to the hospital, returned home and telephoned for an ambulance. The paramedics responded and attended to Johnson by starting an IV and performing an intubation. When Johnson went into cardiac arrest, the paramedics administered medications and cardiopulmonary resuscitation (CPR), to which she temporarily responded. Once she arrived at the hospital, the emergency room doctor continued efforts to resuscitate her until he pronounced her dead at 6:28 p.m.

EIRMC applied to Jefferson County for indigency aid on account of the services rendered to Johnson. The county denied the application and, at the request of EIRMC, the matter was set for hearing before the Jefferson County Board of Commissioners. The commissioners entered findings of facts

and conclusions of law and determined that the application for benefits should be denied. EIRMC appealed from the commissioners' decision to the district court. The district court, upon a review of the record, reversed the commissioners' decision. The county appeals.

## STANDARD OF REVIEW

■ A hospital which has been denied payment for medical care rendered to an indigent person is entitled to judicial review under the Idaho Administrative Procedures Act (APA), I.C. § 67–5201, et seq. *See* I.C. § 31–3505. Judicial review is confined to the record, and the reviewing court may not substitute its judgment for that of the administrative hearing officer on questions of fact. I.C. §§ 67–5277, –5279(1); *Morgan v. Idaho Dep't of Health & Welfare*, 120 Idaho 6, 813 P.2d 345 (1991). Factual determinations by administrative agencies should be overturned only upon a showing of a clearly erroneous decision or an abuse of discretion. *Id. See also* I.C. § 67–5279(3)(d), (e). Erroneous conclusions of law made by an agency may also be corrected on appeal. *Love v. Board of County Comm'rs of Bingham County*, 105 Idaho 558, 671 P.2d 471 (1983).

■ On further appeal from the district court's appellate determination under the APA, the Court of Appeals reviews the record independently of the district court's decision. *Salinas v. Canyon County*, 117 Idaho 218, 786 P.2d 611 (Ct.App.1990). *See also First Interstate Bank of Idaho, N.A. v. West*, 107 Idaho 851, 693 P.2d 1053 (1984). With the above standards and case law in mind, we review the findings and conclusions of the county commissioners.

## ANALYSIS

The commissioners made findings of fact after considering the affidavit of Scott Packer, M.D., the emergency room records and bills that were attached to his affidavit, and the testimony of Johnson's husband who had witnessed his wife's asthma attack and treatment preceding her death. The commissioners found that the onset of Johnson's asthma attack was at 4:00 p.m. and that she suffered cardiac arrest at 5:19 p.m. They found that she had no pulse, no blood pressure and no respirations at 5:45 p.m. The commissioners also found that she had no responses to ambulance personnel and arrived at the hospital cyanotic and incontinent of urine and stool. From these findings, the commissioners concluded that Johnson was deceased prior to her arrival at the hospital and, therefore, the treatment rendered by the hospital was neither reasonable nor necessary.

Under the medical indigency statutes, a claim against the county shall be allowed for services rendered prior to approval of the application where a hospital renders the services to a medically indigent person in an emergency and subsequently approval is obtained. I.C. § 31–3525. Services rendered in an emergency are defined as those reasonably necessary to alleviate illness or injury which, if untreated, is likely to cause death or serious disability. *Id.* In this case, the indigent status of the patient is not at issue. The focus of our inquiry is whether the treatment rendered to Johnson was, as the commissioners concluded, neither reasonable nor necessary.

■ The hospital bears the burden of proving the necessity and the reasonableness of the services provided to a medically indigent patient. *IHC Hospitals, Inc. v. Board of Comm'rs*, 108 Idaho 136, 697 P.2d 1150 (1985), *overruled in part by Intermountain Health Care v. Board of County Comm'rs*, 108 Idaho 757, 702 P.2d 795 (1985). The type of testimony warranted can only be determined on consideration of the facts in each case. *Id.*

In support of its application for payment under the medical indigency statutes, the hospital submitted the affidavit of Dr. Packer, the emergency room physician who treated Johnson. Dr. Packer stated therein that it was incumbent upon him to make a determination as to whether continued efforts to revive Johnson would be successful and that, at 6:28 p.m., he stopped the resuscitation efforts. The doctor also stated that the care provided to Johnson was reasonably necessary emergency treatment and that the amounts charged were reasonable amounts for those services.

The question of necessity has been discussed in the context of the expenditure of large sums of money claimed by a hospital for the transfer and specialized care ordered for several sick, newborn infants. As explained by the Court in *IHC Hospitals, Inc.*:

> It may strain the bounds of credulity to assume that the complex medical procedures performed on these infants were not necessary, but this Court has no firsthand knowledge of these infants, nor are we medical experts. We assume the Board of County Commissioners of Twin Falls shares to some extent our lack of expertise.

*Id.* at 144, 697 P.2d at 1158. We view the resuscitative measures performed on Johnson in the same light, and we are inclined to extend the above analysis to Dr. Packer's continued efforts to sustain Johnson's life.

In addition, our statutes provide a definition of death and prescribe a procedure for its determination. According to the statute, an individual who has sustained either irreversible cessation of circulatory and respiratory functions or irreversible cessation of all functions of the entire brain is dead. I.C. § 54–1819. A determination of death must be made in accordance with accepted medical standards, which means the usual and customary procedures of the medical community in which the determination of death is made. *Id.*

■ Our review of the record does not reveal any evidence contradicting Dr. Packer's averment that the services were necessary and reasonable. The only evidence which contrasted with the doctor's medical opinion was testimony from Johnson's husband who believed that his wife had died on their lawn while being attended by the paramedics. This lay testimony, however, was insufficient to supplant the expert opinion of the doctor as to whether there was a reasonable prospect that the cessation of Johnson's life functions could be reversed when she arrived at the hospital.

■ If the evidence had included competent medical testimony disputing the necessity and reasonableness of Dr. Packer's resuscitative efforts, the commissioners' factual finding may have been sustained. Although one of the commissioners' findings indicates a conflict between the notations in the medical records, the commissioners do not specify the nature of the conflict. The commissioners' ultimate conclusion—that Johnson was dead prior to her arrival at the hospital—was derived from their independent interpretation of the medical records in preference to the unrebutted expert testimony of Dr. Packer. Absent any contrary evidence from a competent medical expert, we must conclude that the hospital followed accepted medical standards.

To hold EIRMC's efforts not compensable would "defeat the clear purpose of the medical indigency statutes, and provide a disincentive to hospitals in treating indigents who may or may not need additional medical procedures." *Salinas v. Canyon County,* 117 Idaho 218, 223, 786 P.2d 611, 616 (Ct.App. 1990). Here, we are faced with the question whether the commissioners would still have found EIRMC's actions unnecessary and unreasonable had Dr. Packer succeeded in reviving Johnson. Under the facts presented, we conclude that the commissioners' independent determination in light of the unrebutted expert medical testimony was erroneous.

We affirm the order of the district court reversing the commissioners' denial of EIRMC's medical indigency assistance application. Costs, but not attorney fees, are awarded to respondent.

WALTERS, C.J., and LANSING, J., concur.